IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 3, 2018 Session

## STATE OF TENNESSEE v. JOSEPH LANGLINAIS

**Appeal from the Circuit Court for Chester County**
**No. 15-CR-47      Donald H. Allen, Judge**

_____

## No. W2016-01686-CCA-R3-CD

_____

A jury convicted the Defendant, Joseph Langlinais, of rape of a child, aggravated sexual battery, and attempted rape of a child, and he received an effective sentence of twenty-eight years in prison. On appeal, the Defendant challenges the sufficiency of the evidence. The Defendant also challenges the admission of his recorded statement to law enforcement, alleging that the recording was inadmissible due to its poor quality, that the recording contained inadmissible evidence of the Defendant's bad acts, and that the recording violated his right to confront witnesses. After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Joseph Taggart, Jackson, Tennessee, for the appellant, Joseph Langlinais.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Jody Pickens, District Attorney General; and Brian Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

The Defendant was convicted for crimes committed in 2012 against his girlfriend's twelve-year-old sister. Law enforcement first became aware of the offenses in 2015, and the victim at that time recounted the details of the crimes to a forensic

examiner. Law enforcement interviewed the Defendant in the parking lot of a business where he had been doing maintenance work, and the Defendant made numerous incriminating statements which were audio recorded. The Defendant was charged with two counts of rape of a child, aggravated sexual battery, and attempted rape of a child.

Prior to trial, the Defendant moved to suppress his statements and exclude the recording from evidence. The trial court denied the motion to suppress based on a finding that the Defendant was not in custody. The hearing on the motion to suppress also established that the Defendant's cellular telephone had been seized in a Madison County investigation in which the Defendant was charged with patronizing prostitution. Defense counsel alleged that any evidence, including video evidence, seized from the cellular telephone or derived from the telephone's seizure was not admissible, but Investigator Jason Crouse testified that there was no overlap in the two investigations and that he was not aware of any evidence gathered from the cellular telephone.

At trial, the victim testified about a sexual encounter she had when she was twelve years old with her sister, who was seventeen years old at the time, and the Defendant, who was nineteen years old at the time.[1] The victim testified that one evening in September of 2012, the Defendant was driving the two sisters to pick up some food. The victim saw the Defendant whisper something to her sister, and the victim's sister then said to the victim, "Do you want to learn about sex?"

The Defendant drove up a gravel road to an abandoned house with a black metal fence, and the victim's sister and the Defendant got into the back seat with the victim, where the dome light illuminated them. The victim's sister kissed the victim to demonstrate how to "French kiss," and the victim then kissed the Defendant in the same way. The victim testified that the Defendant sucked on her nipple for approximately thirty seconds. The Defendant removed his shorts, and the victim and her sister were undressed. The victim testified that she was doing whatever her sister did "[b]ecause they were teaching me what to do," and that she touched the Defendant's penis. She testified that the Defendant's penis penetrated her orally, that she "nick[ed]" him with her teeth, and that he winced in pain. The Defendant told the victim to get on her hands and knees, and then she felt a "hard pressure" as he attempted to penetrate her. She testified that the Defendant stopped the pressure and that the Defendant and her sister had sexual intercourse. The victim left the vehicle. The Defendant and the victim's sister told the victim not to tell anyone "like they usually did when I caught them doing stuff." The

---

[1] The victim did not know the Defendant's age and testified that she believed her sister was sixteen at the time, but the remainder of the record establishes that the Defendant was nineteen and the victim's sister was seventeen in September 2012.

victim clarified that only her sister warned her not to tell but that she "knew they both didn't want me to."

Approximately a year later, the victim's sister had left the family's home and was pregnant with the Defendant's child. The victim testified that after her sister moved out, she told her mother about the incident. Her mother did not believe her at first. At the time of trial, the victim's sister was married to the Defendant, and they had a child. Years later, the Defendant said to the victim, "I'm sorry for what I did [t]o you."

The victim acknowledged that she did not recall if the Defendant asked her to remove her clothing or to touch him. She testified that she believed the Defendant knew that it was her and not her sister performing fellatio because "a different hand touched him."

Investigator Crouse testified that after observing, through a live video feed, the victim's forensic interview in June 2015, he and Investigator Terry Buckley spoke with the Defendant and recorded the Defendant's statements. Investigator Crouse identified a compact disc with his signature as the recording of the interview, and the compact disc was admitted as an exhibit. The State then initiated a bench conference to inform the court that the recording included some statements pertaining to the Defendant's charges in another county and that the State would need to skip a part of the recording. The State indicated it would play approximately fourteen minutes of the recording, skip approximately nine minutes, and then play an additional eleven minutes. The trial court indicated it would dismiss the jury to allow the State to skip the appropriate section. Defense counsel noted that he would be "sitting on the edge of [his] seat" listening.

Our own review of the recording reveals that, approximately six minutes into the interview, investigators confronted the Defendant by telling him that because both the victim and her sister had given statements, "the cat's out of the bag." Investigator Crouse stated that police knew "about L.,[2] about S. …[unintelligible] S.[3] video." Investigator Crouse then stated that law enforcement knew that the victim's sister had performed oral sex on the Defendant and another minor, L., at the same time. Around minute nine, investigators noted that if the Defendant chose not to discuss the matter, then the investigators would rely on the statements of the victim, her sister, and "all these other folks, L. and S." The Defendant acknowledged apologizing to the victim and begging her not to tell. He stated that he was "a follower." At approximately thirteen minutes

---

[2] It is the policy of this court to refer to minors by their initials to protect their privacy.

[3] The record reveals that this was the victim of a statutory rape to which the Defendant entered a guilty plea. According to the victim's sister's statement, which was read into evidence at the hearing on the motion for a new trial, S. was involved in filming a video of the victim's sister and the Defendant.

and fifty seconds into the recording, the Defendant said, "After the video, I don't want to say we talked about it but it was brought up… the fantasy of a threesome." He clarified that this "fantasy" was not specifically about the victim. At approximately fourteen minutes and twenty seconds into the recording, the discussion turns to videos apparently filmed by the victim and S. of the victim's sister and the Defendant and to other sexual acts occurring between the Defendant, the victim's sister, and other teens. This discussion continues through minute twenty-three.

The audio recording was at some point paused at trial, and the prosecutor asked Investigator Crouse if he could understand what the Defendant was saying. Investigator Crouse said, "Yes, that he and [the victim's sister] had spoke[n] about doing this, but not specifically with [the victim]." When questioned further about the first portion of the recording, Investigator Crouse could only say, "I'm apparently not hearing it."

The jury was excused so that the State could skip to the next relevant part of the recording, and the prosecutor observed, "[I]t's come to my attention [that] I think nobody can understand what's being said on the recording." The trial court agreed the recording was difficult to understand, noting that the jury was "straining to try to hear." The prosecutor attempted to adjust the equipment. At this point, defense counsel lodged an objection "to the disc in its entirety" based on its quality. Defense counsel noted that "there could be objectionable material on there, and I just can't catch it." The trial court found that the disc had already been entered into evidence, and the remaining section of the recording was played.

Around minute twenty-nine of the recording, the Defendant acknowledged that the victim kissed him, that he then sucked on her breast, that "something like" both sisters performing fellatio and the victim hurting him with her teeth occurred, and that he "halfway attempted to" penetrate her vaginally.

Investigator Crouse testified that in the recording, "[e]verything that [the victim] … had accused him of, he admitted to." He testified that he asked the Defendant if he had penetrated the victim's vagina with his penis and that the Defendant responded "yes and no, if that makes sense." Investigator Crouse testified that the Defendant stated that "he kind of half-way tried to put it in her," that he had apologized to the victim, and that he said it was "the worst mistake of his life." Investigator Crouse testified that the next day, the Defendant led law enforcement to the place where the vehicle had been parked, and the location matched the victim's description of the location of the offenses.

On cross-examination, defense counsel referenced the recording, stating, "[Q]uite frankly, I couldn't understand it, and I don't know if it was acoustics between over here and over there. I think I caught most of it." Investigator Crouse acknowledged that he

asked the Defendant leading questions when he interviewed him and that the Defendant was a self-described "follower." Investigator Crouse did not know about the crimes until three years after they occurred, and he stated that the lapse in time could make investigation more difficult.

Investigator Crouse acknowledged that, when he conducted his 2015 investigation, he became aware of a related police report filed on July 21, 2013. He elaborated that the report was filed by the victim's sister and that the report alleged that the victim's father had assaulted the victim's sister and planned to fabricate an accusation regarding the Defendant molesting the victim. To his knowledge, no further action was taken in response to the victim's sister's complaint about her father.

The Defendant testified that in September 2012, he was nineteen years old and had been dating the victim's sister for approximately one year. He testified that they had an active sex life and that it was not unusual for them to engage in intercourse with someone watching. When he arrived to pick up the victim's sister for dinner, he learned that the victim would be coming. The Defendant testified that, in the car, it was "sprung on" him that the victim wanted to learn about sex. The Defendant testified that he thought the victim would watch him and her sister have intercourse, and he drove to a location he had previously used for sexual activity.

The Defendant testified that in the car, he was kissing the victim's sister and that the victim and her sister had their tops and bras off. According to the Defendant, the victim's sister began to perform oral sex on him while the victim watched. The Defendant testified that he was "not really paying attention" and that as far as he knew, only the victim's sister performed fellatio on him. He testified that the victim's sister habitually bit him during oral sex. According to the Defendant, when he looked up, the victim was sitting nude on his lap and at that point he "was just done." The victim got dressed, and the Defendant and the victim's sister had intercourse.

The Defendant stated that, after the incident, nothing had changed in his relationship with the victim. He found out in 2013 that the victim had told someone about the encounter. The Defendant testified that he had the victim's parents' blessing to marry the victim's sister but that the victim's father later made threats to "make police reports," take his child away, and send the victim's sister to prison or an institution.

The Defendant explained that he told Investigator Crouse "yes and no" when asked if he penetrated the victim because he was confused. He testified that he had said it was the biggest mistake of his life because he should not have allowed the victim to watch him engage in sexual intercourse with her sister. He acknowledged telling investigators that after the incident, he "broke down" and told the victim and her sister

not to tell anybody. The Defendant accounted for his statements to police acknowledging sexual contact with the victim by stating that he was "caught off-guard" and that he was trying to prevent the victim's sister from going to prison. The Defendant claimed, "I took the blame for it because I love my family." He acknowledged that he was aware of the victim's age. He also acknowledged that the victim and her sister did not look alike and that there was a difference in their weight.

The trial court granted judgment of acquittal on one count of rape of a child but allowed the remaining charges to go to the jury. The State elected to base the rape of a child charge on fellatio, the aggravated sexual battery charge on the Defendant's contact with the victim's breast, and the attempted rape of a child charge on the Defendant's attempt to vaginally penetrate the victim. The jury found the Defendant guilty on all three counts and imposed fines of $50,000, $25,000, and $25,000. The trial court sentenced the Defendant to concurrent sentences of twenty-eight years, ten years, and ten years, for an effective sentence of twenty-eight years.

## ANALYSIS

### I. Sufficiency of the Evidence

The Defendant challenges the sufficiency of the evidence for his conviction for rape of a child. Under Tennessee Rule of Appellate Procedure 13(e), "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." In evaluating the sufficiency of the evidence, the court must determine whether, considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002). This court will not reweigh or reevaluate the evidence, and it may not substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004). A jury's verdict of guilt, approved by the trial court, resolves conflicts of evidence in the State's favor and accredits the testimony of the State's witnesses. *State v. Smith*, 436 S.W.3d 751, 764 (Tenn. 2014). The trier of fact is entrusted with determinations concerning witness credibility, factual findings, and the weight and value of evidence. *Id.* The State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that can be drawn from it. *Goodwin*, 143 S.W.3d at 775. "Because the verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, Defendant bears the burden on appeal of showing why the evidence is insufficient to support the jury's verdict." *State v. Franklin*, 308 S.W.3d 799, 825 (Tenn. 2010). Circumstantial evidence may, by itself,

support a conviction, and the State is not required to exclude every reasonable hypothesis save guilt. *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013).

The Defendant raises no challenge to the sufficiency of the evidence supporting his convictions for aggravated sexual battery or attempted rape of a child. The Defendant challenges his rape of a child conviction by contending that, had the jury accepted the Defendant's version of events, then it could not have found that he had the requisite *mens rea* for rape of a child because the Defendant testified that he believed it was the victim's older sister, and not the victim, who was performing fellatio.

Rape of a child is "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522(a). "Sexual penetration" includes fellatio. T.C.A. § 39-13-501(7). Because the *mens rea* is not specified in the elements of the crime, the State had to prove that the Defendant acted either intentionally, knowingly, or recklessly. T.C.A. § 39-11-301(c); *State v. Clark*, 452 S.W.3d 268, 296-97 (Tenn. 2014) (holding that the generic *mens rea* statue applies to both elements of rape of a child: sexual penetration and the age of the child).

The Defendant asserts that he was not aware that the sexual contact in the vehicle took place between himself and the victim. On reviewing the sufficiency of the evidence, however, we look at the evidence in the light most favorable to the State, and we not only presume that all conflicts in evidence have been resolved in the State's favor, but we also grant the State all reasonable and legitimate inferences to be drawn from the evidence. *Smith*, 436 S.W.3d at 764. While the Defendant testified that he was not aware of any sexual contact between himself and the victim, the victim testified that the Defendant kissed her breast, attempted to penetrate her vaginally, and penetrated her orally. She also testified that there was enough light for the Defendant to see and that the Defendant would have realized that it was her and not her sister performing fellatio because "a different hand touched him." The Defendant acknowledged all three instances of sexual contact between himself and the victim during his interview with Investigator Crouse. The jury credited the victim's testimony and the Defendant's own statement to police, and we will not disturb the jury's findings on appeal.

## II. The Defendant's Recorded Statement

The Defendant next objects to the fact that portions of his recorded statement to police were played during trial. The Defendant asserts that the trial court erred in allowing the recording to be played despite the fact that it was "unintelligible" to defense counsel. The Defendant also argues that there was a mention of a "video" in the second portion of the recording played for the jury, although he does not specify the context in

which the word is used. He asserts that the word "video" was a reference to inadmissible evidence. In his final argument, the Defendant alleges that his right to confront witnesses was violated. Acknowledging that these issues were largely waived, he requests plain error review.

For an error to constitute plain error sufficient to merit relief, the following factors must be present:

(1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice.

*State v. Bishop*, 431 S.W.3d 22, 44 (Tenn. 2014) (citing *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). Additionally, "'the plain error must be of such a great magnitude that it probably changed the outcome'" of the proceeding. *Id.* (quoting *Adkisson,* 899 S.W.2d at 642). This court need not consider all the factors if it is clear that the defendant will fail to establish at least one. *State v. Jordan*, 325 S.W.3d 1, 58 (Tenn. 2010).

### A. Introduction of the Compact Disc

At trial, the State asked Investigator Crouse to authenticate a compact disc containing the interview with the Defendant, and the prosecutor moved to admit the compact disc into evidence with no objection from the defense. The Defendant acknowledges that he did not object to the admission of the compact disc containing the recording, and we agree that this issue was waived when the Defendant specifically acquiesced to the introduction of the compact disc. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). The Defendant argues that the lack of clarity in the recording should nevertheless have rendered it inadmissible.

The Defendant is not entitled to plain error relief because no clear and unequivocal rule of law was breached. The Defendant's argument appears to be that, because the recording was difficult to understand, it should have been excluded in its entirety. The trial court found at the hearing on the motion for a new trial that "it wasn't a very clear recording" but that "most of it was audible." Likewise, defense counsel stated, "I couldn't understand it," but then clarified, "I think I caught most of it." The recording contained relevant evidence despite the fact that it was difficult to understand and that

portions of it were inaudible. The quality and audibility of a recording affects its weight rather than its admissibility. *State v. Ginger Jackson*, No. M2003-02539-CCA-R3-CD, 2005 WL 544727, at *8 (Tenn. Crim. App. Mar. 4, 2005) ("That portions of the audiotapes are inaudible does not affect their admissibility."); *State v. Morris*, 666 S.W.2d 471, 473 (Tenn. Crim. App. 1983) ("The quality of the tape, or rather the lack of quality and clarity of the recording[,] affected the weight to be given it as evidence and not its admissibility."). Accordingly, the trial court breached no clear and unequivocal rule of law in admitting the recording, and the Defendant is not entitled to relief.

## B. Admission of Evidence of Bad Acts

The Defendant maintains that there is a possibility that the State failed to redact all references to the Defendant's other bad acts which were contained on the audio recording. Defense counsel asserts that he heard the word "video" during the second portion of the garbled recording and that the word must have been a reference to video evidence recovered from the Defendant's cellular telephone in the investigation of his Madison County offenses.[4]

Initially, it appears that the Defendant argues that this issue is not waived because he attempted to lodge a contemporaneous objection.[5] Defense counsel contends that the trial court would "not acknowledge" his attempt to object to the mention of a video on the recording. He admits that the record does not reflect this attempted objection and endeavors to introduce the fact by attaching affidavits regarding the same to his brief. This court cannot consider facts appended to the record by affidavit except in specific circumstances not present here. Tenn. R. App. P. 13(c) (noting that this court "may consider those facts established by the evidence in the trial court and set forth in the record and any additional facts that may be judicially noticed or are considered pursuant to rule 14"); *State v. Bobadilla*, 181 S.W.3d 641, 643 (Tenn. 2005) ("What is in the record sets the boundaries for what the appellate courts may review, and thus only evidence contained therein can be considered."); *Michael Scott Farner v. State*, No. E2014-02165-CCA-R3-PC, 2015 WL 4710392, at *3 (Tenn. Crim. App. Aug. 7, 2015) (refusing to consider affidavits attached to brief); *Darren Brown v. State*, No. W2012-02584-CCA-MR3-PC, 2013 WL 6405736, at *3 (Tenn. Crim. App. Dec. 5, 2013) ("Merely attaching a document to a brief does not include that document in the appellate record, and it should not be considered by this court as part of the record."). Moreover, the trial court found that it "never disallowed [defense counsel] to object at the appropriate time." We conclude that the record shows no objection to any references to

---

[4] It is not clear from the record whether any videos were in existence at the time of the investigation or whether anything was recovered from the Defendant's cellular telephone.

[5] We note that the parties could have properly redacted the recording prior to trial.

the Defendant's bad acts, and he has waived the argument that the references were admitted in error. We review for plain error.

The trial court found that the inadmissible portions of the tape "never came in as evidence" and that "there was no reference … to other evidence in other cases." In general, we are bound by a trial court's findings of fact unless the evidence preponderates against them. *State v. Zeolia*, 928 S.W.2d 457, 462 (Tenn. Crim. App. 1996). It is apparent from the record that, while the audio recording contains portions that are difficult to understand, this difficulty was greatly exacerbated by the sound equipment used in the courtroom.[6] When questioned about the first portion of the recording, Investigator Crouse stated, "I'm apparently not hearing it." The prosecutor, after playing the first portion of the recording, noted, "[I]t's come to my attention I think nobody can understand what's being said on the recording." The trial judge agreed that he was having difficulty understanding the audio and that the jury was "straining to try to hear."

The prosecutor stated at trial that he would play approximately fourteen minutes of the recording, skip approximately nine minutes, and then play eleven more minutes. These time estimates align with the portions of the recording that are relevant to the case at bar. The recording contains apparent references to the Defendant's bad acts around minute six, where investigators reference the video made by the victim of the statutory rape charge; around minute nine, when investigators reference statements made by the victim, her sister, and "all these other folks, L. and S."; immediately before minute fourteen, when the Defendant refers to "the video"; and at minute twenty-three, where an investigator ask if the video with the victim took place before the incident in the truck.

While the recording obviously contains references to the Defendant's bad acts, *see* Tenn. R. Evid. 404(b), we conclude that the Defendant cannot establish plain error. To demonstrate plain error, the record must clearly establish what occurred in the trial court, and the record before us fails to do so. While the prosecutor expressed his intent to play certain portions of the recording, nothing in the record demonstrates that he did so or establishes at what point the recording was started or stopped. Unlike this court, which can review the disc at its leisure, the trial court heard the recording once, in the courtroom, through equipment which provided substandard sound quality to the point that defense counsel described the recording as "unintelligible." The trial court found that there were no audible references to any bad acts in the portion of the recording which was put before the jury, and given the widespread agreement that the recording was barely audible, the record as it stands does not preponderate against that finding. *See State v. Elvin Hubie Pearson and Marcus Anthony Pearson*, No. M2007-02826-CCA-R3-CD,

---

[6] Defense counsel acknowledged at oral argument that the recording itself was audible when played on other equipment.

2009 WL 1616678, at *11 (Tenn. Crim. App. June 10, 2009) (noting that the appellate court could not reach the merits of an allegation that a recording was improperly put before the jury because the record did not indicate which portions were played); *compare State v. Marvis Deshun Pollard*, No. W2016-01788-CCA-R3-CD, 2017 WL 4877458, at *5 (Tenn. Crim. App. Oct. 30, 2017) (holding that when there was no indication that the jury's consideration of a recording was limited during deliberations, the entire video entered into evidence could support a review of the sufficiency of the evidence, even though only portions were published during trial). In fact, the Defendant's brief acknowledges that "[t]o this date[,] the Defendant does not know the content of the materials published for the jury to consider." Accordingly, the record does not clearly establish what occurred at trial.

Neither do we conclude that consideration of any error is necessary to do substantial justice or that any error was so grave that "'it probably changed the outcome'" of the proceeding. *Bishop*, 431 S.W.3d at 44 (quoting *Adkisson,* 899 S.W.2d at 642). The jury was presented with an audio recording in which the Defendant acknowledged that he sucked on the victim's breast, that he "halfway attempted to" penetrate her vaginally, and that "something like" the victim performing oral sex on him and hurting him with her teeth took place. These admissions were entirely consistent with the victim's own testimony. The four brief and unexplored references to a video or to other sexual activities was not error of the kind that probably changed the outcome of the trial. The Defendant is not entitled to relief.

### C. Confrontation Clause

The Defendant argues that the introduction of the video was a violation of his right to confront witnesses. Because the Defendant did not raise this issue in front of the trial court, it is waived. Tenn. R. App. P. 36(a); Tenn. R. App. P. 3(e) (noting that a ground for relief predicated on the introduction of evidence is waived unless it is raised in the motion for a new trial). Furthermore, he has not established he is entitled to plain error relief because no clear and unequivocal rule of law was breached.

The Confrontation Clause of the Sixth Amendment of the United States Constitution and article I, section 9 of the Tennessee Constitution protect the right of the accused to confront witnesses by physically facing witnesses and cross-examining witnesses. *State v. McCoy*, 459 S.W.3d 1, 12-13 (Tenn. 2014). The Confrontation Clause requires that testimonial hearsay statements be excluded from evidence unless the declarant is a witness at trial or the declarant is unavailable and the accused had a prior opportunity to cross-examine the declarant. *Id.* at 14. The Confrontation Clause places "'no constraints at all'" on testimonial statements from a witness who is present at trial and available for cross-examination. *State v. Dotson*, 450 S.W.3d 1, 64 (Tenn. 2014)

(quoting *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004)). When a statement is not hearsay because it is not offered for the truth of the matter asserted, it does not constitute a violation of the right to confrontation. *Id.*; *see* Tenn. R. Evid. 801(c). Likewise, when a statement is nontestimonial, it is admissible subject to the Tennessee Rules of Evidence regarding hearsay. *Franklin*, 308 S.W.3d at 810.

The recording at issue here contained statements and questions from Investigator Crouse and another law enforcement officer and statements made by the Defendant. Not only was Investigator Crouse present at trial for cross-examination, but "the Confrontation Clause does not bar statements lacking assertive content, such as commands or questions." *State v. Bobby Lewis Smith*, No. M2010-02077-CCA-R3-CD, 2012 WL 3776679, at \*2 (Tenn. Crim. App. Aug. 31, 2012). The questions and statements of investigators were offered to give context to the Defendant's own statements. *State v. Price*, 46 S.W.3d 785, 804 (Tenn. Crim. App. 2000) (concluding that a co-defendant's recorded statements were admissible because they were only offered to provide context for the defendant's own statements). The remaining statements on the recording were exceptions to the rules against hearsay because they were the Defendant's own admissions. *See* Tenn. R. Evid. 803(1.2); *Bobby Lewis Smith*, 2012 WL 3776679, at \*4 (noting that the defendant's own statements would not violate the Confrontation Clause); *Canady v. State*, 461 S.W.2d 53, 60 (Tenn. Crim. App. 1970) (holding that the defendant could not claim that his own statement violated his right to confrontation). Accordingly, the recording did not violate the Confrontation Clause, and no clear and unequivocal rule of law was violated.

## CONCLUSION

Based on the foregoing, the judgments of the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE